IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

RONALD LEROY SUNDQUIST II,     )
                                )
                    Plaintiff,  )
                                )
        v.                      )   Case No. 13-05031-CV-W-REL-SSA
                                )
CAROLYN COLVIN, Acting Commissioner )
of Social Security,             )
                                )
                    Defendant.  )

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Ronald Leroy Sundquist II seeks review of the final decision of the Commissioner of Social Security denying plaintiff's applications for disability and supplemental security income benefits under Titles II and XVI of the Social Security Act ("the Act"). Plaintiff argues that the Administrative Law Judge (ALJ) (1) erred in his determination of plaintiff's residual functional capacity (RFC); (2) did not fully and fairly develop the record; and (3) erred in resolving the credibility of plaintiff's complaints. I find that the substantial evidence in the record as a whole supports the ALJ's conclusion that plaintiff is not disabled. Therefore, plaintiff's motion for summary judgment will be denied and the decision of the Commissioner will be affirmed.

### I.    COMMISIONER'S DECISION

On July 7, 2009 and July 9, 2009, plaintiff protectively filed his applications for disability and supplemental security income benefits. Plaintiff alleged disability since April 18, 2009 (Tr. 142-46, 149-55). Plaintiff alleged disability due to a combination of physical impairments (Tr. 183). On November 30, 2009, plaintiff's claim was denied at the initial level (Tr. 71-75). On February 16, 2011, a hearing was held before an ALJ (Tr. 11-45). On April 11, 2011, the ALJ found that plaintiff was not under a disability as defined in the Act (Tr. 46-68). On January 16,

2013, the Appeals Council denied plaintiff's request for review (Tr. 1-6). Therefore, the ALJ's decision stands as the final action by the Commissioner.

## II.     STANDARD FOR JUDICIAL REVIEW

Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a final decision of the Commissioner. The standard for judicial review by the federal district court is whether the decision of the Commissioner was supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Mittlestedt v. Apfel, 204 F.3d 847, 850-51 (8th Cir. 2000); Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997); Andler v. Chater, 100 F.3d 1389, 1392 (8th Cir. 1996). The determination of whether the Commissioner's decision is supported by substantial evidence requires review of the entire record, considering the evidence in support of and in opposition to the Commissioner's decision. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989). "The Court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Wilcutts v. Apfel, 143 F.3d 1134, 1136 (8th Cir. 1998) (citing Steadman v. Securities & Exchange Commission, 450 U.S. 91, 99 (1981)).

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. at 401; Jernigan v. Sullivan, 948 F.2d 1070, 1073 n. 5 (8th Cir. 1991). However, the substantial evidence standard presupposes a zone of choice within which the decision makers can go either way, without interference by the courts. "[A]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Id. Clarke v. Bowen, 843 F.2d 271, 272-73 (8th Cir. 1988).

2

## III. BURDEN OF PROOF AND SEQUENTIAL EVALUATION PROCESS

An individual claiming disability benefits has the burden of proving he is unable to return to past relevant work by reason of a medically-determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). If the plaintiff establishes that he is unable to return to past relevant work because of the disability, the burden of persuasion shifts to the Commissioner to establish that there is some other type of substantial gainful activity in the national economy that the plaintiff can perform. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000); Brock v. Apfel, 118 F. Supp. 2d 974 (W.D. Mo. 2000).

The Social Security Administration has promulgated detailed regulations setting out a sequential evaluation process to determine whether a claimant is disabled. These regulations are codified at 20 C.F.R. §§ 404.1501, et seq. The five-step sequential evaluation process used by the Commissioner is outlined in 20 C.F.R. § 404.1520 and is summarized as follows:

1. Is the claimant performing substantial gainful activity?

    Yes = not disabled.
    No = go to next step.

2. Does the claimant have a severe impairment or a combination of impairments which significantly limits his ability to do basic work activities?

    No = not disabled.
    Yes = go to next step.

3. Does the impairment meet or equal a listed impairment in Appendix 1?

    Yes = disabled.
    No = go to next step.

4. Does the impairment prevent the claimant from doing past relevant work?

    No = not disabled.
    Yes = go to next step where burden shifts to Commissioner.

5. Does the impairment prevent the claimant from doing any other work?

> Yes = disabled.
> No = not disabled.

## IV. *THE RECORD*

The record consists of the testimony of plaintiff and a vocational expert, Steve L. Benjamin, M.S., C.R.C., and the documentary evidence admitted at the February 16, 2011 hearing.

### A. ADMINISTRATIVE REPORT

The record contains the following administrative report showing that plaintiff earned the following income from 1979 to 2009:

| Year | Earnings | Year | Earnings |
|------|----------|------|----------|
| 1979 | $ 1,044.69 | 1995 | $31,754.44 |
| 1980 | 1,818.06 | 1996 | 33,568.35 |
| 1981 | 4,621.07 | 1997 | 35,311.08 |
| 1982 | 11,638.41 | 1998 | 36,622.62 |
| 1983 | 13,122.14 | 1999 | 43,547.35 |
| 1984 | 16,292.26 | 2000 | 46,739.25 |
| 1985 | 12,114.64 | 2001 | 34,339.17 |
| 1986 | 9,848.03 | 2002 | 57,278.17 |
| 1987 | 22,095.38 | 2003 | 56,322.52 |
| 1988 | 20,729.20 | 2004 | 47,493.90 |
| 1989 | 21,619.06 | 2005 | 7,116.36 |
| 1990 | 26,634.38 | 2006 | 9,863.00 |
| 1991 | 26,847.17 | 2007 | 6,664.00 |

| | | | |
|---|---|---|---|
| 1992 | 33,442.27 | 2008 | 15,542.70 |
| 1993 | 37,139.20 | 2009 | 9,690.71 |
| 1994 | 39,591.66 | | |

(Tr. 161).

**B.     SUMMARY OF MEDICAL RECORDS**

As summarized by plaintiff and the Commissioner on appeal, the medical record reflects diagnosis and treatment of a combination of physical and mental impairments.

**C.     SUMMARY OF TESTIMONY**

During the February 16, 2011 hearing, testimony was taken from plaintiff and Steve L. Benjamin, M.S., C.R.C., a vocational expert.

**1.     Plaintiff's Testimony**

As to his physical condition, plaintiff said that he sustained an on-the-job injury in November 2008 to his neck and left shoulder, that he underwent neck surgery in August 2009, that he underwent a rotator cuff release in November 2010, but that he still experiences neck and left shoulder pain (Tr. 17-18, 19-20, 32-33). Plaintiff also complained of right-wrist injury, incurred during boot camp in 1980 or 1981, that required surgery but still causes pain and numbness (Tr. 19, 21, 28-29, 30, 38). Plaintiff reported that he has bilateral carpal-tunnel syndrome, right worse than left (Tr. 18, 20). Plaintiff complained about eye problems, following his corneal transplants, that include depth perception difficulty and "triple vision" (Tr. 19, 24-25). Finally, plaintiff complained about hypertension (Tr. 21).

As to his mental condition, plaintiff testified that he is depressed and anxious (Tr. 18, 20-21). Plaintiff admitted that he has abused cocaine and alcohol in the past, but denied cocaine use since 2007, and related that he no longer abuses alcohol because of the many prescription

drugs that he takes (Tr. 37).

**2.    Vocational Expert's Testimony**

Steve L. Benjamin, M.S., C.R.C., a vocational expert (Tr. 140-41), testified at the ALJ's request. The expert provided the following classification of plaintiff's past relevant work:

- Sales representative is light and semi-skilled;
- Commercial drafter is sedentary and semi-skilled;
- Regional vice president is sedentary and skilled; and
- Finance manager is sedentary and skilled (Tr. 214-15).

The ALJ posed a hypothetical question with a limitation to sedentary work (Tr. 41). The hypothetical individual must avoid concentrated exposure to cold temperature extremes; must avoid occupations that require more than frequent depth perception; must avoid occupations that require exposure to dangerous machinery and unprotected heights; could occasionally perform overhead reaching with his upper extremities; could frequently perform fine fingering and gross manipulation; could occasionally perform posturals such as stooping, crouching, kneeling, and crawling; could occasionally climb ramps and stairs; but could not climb ladders, ropes, or scaffolds. Such an individual would also be limited to simple, routine, repetitive tasks (Tr. 41). In response to this question, the expert opined that such a hypothetical individual could not return to any of plaintiff's past relevant work (Tr. 41); however, such individual would be able to perform simple sedentary jobs including order clerk (food and beverage industry); document preparer; and stuffer (Tr. 41-42).

When the hypothetical question was modified to include a need to take up to three-to-four breaks for 30 to 45 minutes during the workday, Mr. Richards said that the identified jobs would be eliminated (Tr. 43).

## V. FINDINGS OF THE ALJ

ALJ James Harty entered his decision on April 11, 2011. The ALJ found that plaintiff has not engaged in substantial gainful activity since April 18, 2009, the alleged disability onset date (Tr. 51). The ALJ found (1) that plaintiff has the following severe impairments: status-post left rotator-cuff repair; mild bilateral carpal-tunnel syndrome; status-post remote right wrist surgery; bilateral corneal transplants; status post cervical spine discectomy and fusion; osteoarthritis; mood disorder not otherwise specified (NOS); rule out substance induced mood disorder; and rule out bipolar disorder; and (2) that plaintiff has the following non-severe impairments: obesity; hypertension; alcohol (ETOH) dependence; and cocaine dependence, in remission (Tr. 51-52). The ALJ found that plaintiff's impairments neither meet nor equal the severity requirements of a Listing (Tr. 52-53). The ALJ found that plaintiff retains the RFC for a wide range of sedentary work (Tr. 53-62); that plaintiff cannot return to his past relevant work (Tr. 62-63); but that plaintiff can perform other jobs existing in significant numbers in the national economy (Tr. 83-84). Accordingly, the ALJ concluded that plaintiff is not disabled (Tr. 84).

## VI. ANALYSIS

### A. RFC

Plaintiff first argues that the ALJ erred in the finding of plaintiff's RFC. In response, the Commissioner states that the ALJ assessed plaintiff's RFC based on a review of the evidence as a whole including the objective medical evidence, plaintiff's credibility, the treatment modalities, plaintiff's daily activities, and plaintiff's work activity since his remote right wrist surgery and his more recent neck injury.

The Eighth Circuit has stated that an ALJ "must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and

7

others, and an individual's own description of his limitations." McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (citation omitted); 20 C.F.R. §§ 404.1545 and 416.945; SSR 96-8p. Although formulation of the RFC is part of the medical portion of disability adjudication, it is not based only on medical evidence but, instead, on all the relevant and credible evidence in the record. McKinney, 228 F.3d at 863. Assessing a claimant's RFC is not solely a medical question. Pearsall v. Massanari, 274 F.3d 1211, 1217-18 (8th Cir. 2001).

The Eighth Circuit has also acknowledged that ALJ makes the final determination of a claimant's RFC Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)); and that "[i]t is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." Pearsall, 274 F.3d at 1217 (citing Anderson, 51 F.3d at 779).

On appeal, plaintiff focuses on his right wrist, neck, and left shoulder. Although not a part of the direct evidence in the case, plaintiff alleges that he sustained a right wrist fracture over twenty years ago while serving in the US military. Plaintiff underwent surgery, but he complains that the wrist did not heal properly (Tr. 891). However, the medical record dealing with the wrist shows that:

- Imaging in 2008 and 2010 showed post-traumatic and surgical changes with osteoarthritis (Tr. 244, 448, 716).
- A March 2010 neurological evaluation, which included a nerve conduction velocity study (NCVS) and electromyogram (EMG), showed only a mild carpal tunnel syndrome and no other entrapment, radiculopathy, or brachial plexopathy (Tr. 984-85).
- In July 16, 2010, Jagjivan R. Mehta, M.D., a consulting neurologist,

recommended that plaintiff avoid or minimize activities exerting repetitive stress to his wrists (Tr. 1093).

This evidence does not support plaintiff's complaints of the disabling character of his wrist problem.

The ALJ observed that plaintiff sustained an on-the-job injury to his neck in November 2008, while he was moving a motorcycle. The neck problem was treated conservatively, and plaintiff was returned to work. Either because he failed to wear proper protective gear that would have prevented this injury (Tr. 183, 727) or because he filed a worker's compensation claim as a result of the injury (Tr. 898-99, 1209), plaintiff was fired from the job on April 18, 2009 - which interestingly is also his alleged disability onset date (Tr. 183).[1]

As to the neck problem, imaging revealed degenerative disc disease and/or degenerative disc herniation of the cervical spine (Tr. 245, 482, 503, 536-38, 542-43, 544-46, 720). Plaintiff underwent a cervical discectomy with fusion on August 7, 2009 by Adrian Jackson, M.D., from which there were no complications (Tr. 435-43, 548-50, 558-63, 566-69, 583-618). With physical therapy, plaintiff showed improvement. On November 9, 2009, plaintiff told Dr. Jackson that he was doing "significantly better." The surgeon determined that plaintiff had reached maximum medical improvement and released plaintiff "to return to his ordinary duties without restrictions" (Tr. 711).

On January 6, 2010, Dr. Jackson rated plaintiff as having a 15% permanent-partial disability of the whole-person as a result of the November 2008 incident (Tr. 713).

At the completion of an April 6, 2010 worker's compensation evaluation at the request of counsel, Cyril Raben, M.D., rated plaintiff as having a 25% impairment of the whole-person as a result of the 2008 neck injury (Tr. 820).

---

[1] Plaintiff has given these two explanations for his employment termination.

This evidence does not support plaintiff's complaint about the disability nature of his neck problem.

Finally, plaintiff raises an issue concerning problems with his left shoulder. Plaintiff complained of shoulder pain after the November 2008 motorcycle accident. In April 2010, Dr. Raben rated the shoulder condition as being a 15% impairment of the whole-person (Tr. 820). However, as noted by the ALJ, on July 28, 2010, plaintiff went to one of his treating doctors complaining of left shoulder pain resulting from a gardening accident the previous evening. Plaintiff said that he felt a sudden tearing sensation in his left upper arm while digging potatoes (Tr. 1071). A September 28, 2010 MRI of the shoulder revealed several complete rotator-cuff tears (Tr. 1006, 1107-08). On November 1, 2010, plaintiff underwent a rotator-cuff repair without complications (Tr. 1198). Therefore, plaintiff's left shoulder problem has been *de minimus* from its inception, when it was found to be a 15% impairment, through the subsequent rotator cuff repair, which went off without complications.

After an extensive review of the medical record, the ALJ found that plaintiff's combined impairments (wrist, neck, and shoulder) are severe but do not preclude the performance of a wide-range of sedentary work. The administrative regulations do not require a plaintiff to be symptom-free in order to be found not disabled. Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) (the mere presence of a mental disturbance is not disabling *per se*, absent a showing of severe functional loss establishing an inability to engage in substantial gainful activity).

Here, there is substantial evidence supporting the ALJ's findings that plaintiff's combined problems of his wrist, neck, and shoulder, are not disabling:

- Plaintiff's right wrist problem did not prevent plaintiff from working for over 25 years. Plaintiff has not undergone any recent surgery to address problems with the

wrist.

- Plaintiff's neck injury occurred in November 2008 (months before his alleged onset date), the corrective surgery was performed in August 2009, and plaintiff was released back to work. No further surgery has been required.
- Plaintiff's left shoulder rotator cuff tear occurred in July 2010, after a gardening incident, and was repaired three months later. No further surgery has been required.

An ALJ may properly conclude that the minimal treatment of conditions is inconsistent with a plaintiff's allegations of disabling symptoms. Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997). ("[Plaintiff's] failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits.").

Plaintiff next maintains that the medical evidence shows that he is not capable of performing frequent fine fingering and gross manipulation. In response, the Commissioner argues that the ALJ reviewed the evidence and found that the record supports a less-restrictive limitation.

An ALJ makes his or her own assessment based on his or her review of the record as a whole. Steed v. Astrue, 524 F.3d 872, 865 (8th Cir. 2008) (ALJ's residual functional capacity finding based upon diagnostic tests and examination results); Halverson v. Astrue, 600 F.3d 922, 933-34 (8th Cir. 2010)

Evidence that both supports and detracts from the Commissioner's decision should be considered, but an administrative decision should not be reversed simply because some evidence supports the opposite conclusion. Finch v Astrue, 547 F.3d 933, 935 (8th Cir. 2008). A reviewing

court should disturb the ALJ's decision only if it falls outside the available "zone of choice" and a decision is not outside that zone of choice simply because the court may have reached a different conclusion had the court been the factfinder in the first instance. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011); McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome"). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Commissioner. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

I find that substantial evidence as a whole supports the ALJ's finding. The ALJ did not find that the orthopedic impairment had no impact on plaintiff's RFC; instead, the judge limited plaintiff to sedentary work with no more than frequent fine fingering and gross manipulation to accommodate this impairment.

Plaintiff next argues that the ALJ's RFC is inconsistent with Dr. Mehta's July 16, 2010 recommendation that plaintiff avoid or minimize activities with repetitive stress to his wrists. In response, the Commissioner states that the ALJ included the appropriate limitations after reviewing the record as a whole.

An ALJ does not have to rely entirely on a doctor's opinion, nor is he or she limited to a simple choice of the medical opinions of record when he or she formulates the residual functional capacity. Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the [plaintiff's] physicians") (internal citations omitted). Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence

between a residual functional capacity finding and a specific medical opinion on the functional capacity in question."). The RFC assessment is specifically reserved to the Commissioner and the ALJ, not a plaintiff's doctors. The Commissioner uses medical sources to provide evidence about several factors, including residual functional capacity, but the "final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 416.927(d)(2).

An ALJ's residual functional capacity and hypothetical question need only include those limitations that he or she finds are substantially supported by the record as a whole. <u>Lacroix v. Barnhart</u>, 465 F.3d 881, 889 (8th Cir. 2006). Discredited subjective complaints are properly excluded from a hypothetical question so long as the ALJ had reason to discredit them. <u>Guilliams v. Barnhart</u>, 393 F.3d 798, 804 (8th Cir. 2005). Here, because the residual functional capacity and hypothetical question included only those impairments the ALJ found credible, and excluded those that the judge discredited for legitimate reasons, the vocational expert's testimony that plaintiff could perform work existing in significant numbers amounted to substantial evidence in support of the ALJ's determination. See <u>Martise</u>, 641 F.3d at 927; <u>Gragg v. Astrue</u>, 615 F.3d 932, 941 (8th Cir. 2010).

Here, plaintiff's wrist problems began over 20 years ago. Plaintiff worked at substantial gainful activity level after the injury and surgery. Plaintiff has not undergone further wrist surgery. The NCVS/EMG revealed only mild carpal-tunnel syndrome with no radiculopathy. I therefore find that substantial evidence supports the level of limitation found by the ALJ.

**B.    FULLY AND FAIRLY DEVELOP THE RECORD**

Plaintiff next questions whether the ALJ reviewed the entire file before issuing his unfavorable decision. Plaintiff asserts that "it is abundantly clear that the ALJ failed to review substantial portions of the medical record." In support of this challenge, plaintiff cites (1) a

statement made by the ALJ at the hearing remarking that his notes did not list hypertension or osteoarthritis (Tr. 22) and (2) isolated statements drawn from the judge's decision, which plaintiff claims are inaccurate (Tr. 61, 62). In response, the Commissioner points to (1) a statement by the ALJ at the hearing indicating that he would go back through the medical record to see if he could pick up the references to hypertension and osteoarthritis (Tr. 23) and (2) the decision itself wherein the ALJ specifically represented that he had reviewed the record.

The ALJ provided a thorough discussion of the record in his decision. The ALJ included specific citations to almost every medical exhibit in the record, and made specific findings (e.g., plaintiff's osteoarthritis is a severe impairment and plaintiff's hypertension is a non-severe impairment).

I find that plaintiff's allegations are without merit.

**C.     CREDIBILITY**

Finally, plaintiff takes issue with the ALJ's conclusion that his complaints are not fully credible. In response, the Commissioner argues that the ALJ's credibility findings are support by the record.

The credibility of a plaintiff's subjective testimony is primarily for the Commissioner to decide, not the courts. Rautio v. Bowen, 862 F.2d 176, 178 (8th Cir. 1988);   Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If there are inconsistencies in the record as a whole, the ALJ may discount subjective complaints. Gray v. Apfel, 192 F.3d 799, 803 (8th Cir. 1999); McClees v. Shalala, 2 F.3d 301, 303 (8th Cir. 1993). However, the ALJ must make express credibility determinations and set forth the inconsistencies that led to his or her conclusions. Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995); Robinson v. Sullivan, 956 F.2d 836, 839 (8th Cir. 1992). If an ALJ explicitly discredits testimony and gives legally sufficient reasons for doing so, the court

must defer to the ALJ's judgment unless it is not supported by substantial evidence on the record as a whole. Robinson, 956 F.2d at 841.

Subjective complaints may not be evaluated solely on the basis of objective medical evidence or the personal observations by the ALJ. In determining credibility, consideration must be given to all relevant factors, including plaintiff's prior work record and observations by third parties and treating and examining physicians relating to such matters as plaintiff's daily activities; the duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). Social Security Ruling 96-7p encompasses the same factors as those enumerated in the Polaski opinion, and additionally states that the following factors should be considered: treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board).

Summarizing plaintiff's physical conditions and their treatment:

- The wrist surgery was more than 20 years ago and there has been no need for further surgery. Plaintiff worked at substantial gainful activity level since the surgery.

- Although plaintiff injured his neck in November 2008, he continued to work until April 2009. Regardless of whether plaintiff lost his job because he failed to wear a helmet or lost his job for filing a worker's compensation claim, plaintiff was fired for non-disability reasons. Plaintiff underwent the cervical fusion in August 2009, and there were no complications. Within three months of the fusion, Dr. Jackson

15

released plaintiff to return to work without any restrictions. There has been no need for further neck surgery.

- Although plaintiff experienced some left shoulder problems after the November 2008 work-related injury, the major cause of disability was the July 2010 injury sustained while plaintiff was digging potatoes in his garden. This is more than fifteen months after the alleged disability onset date. Plaintiff's rotator cuff repair took place three months after the injury and was performed without complications. No further shoulder surgery has been needed.

Also, plaintiff has been non-compliant with his doctor's treatment and recommendations - missing appointments and failing to fill prescriptions. "A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility." Guilliams, 393 F.3d at 802 (citing Gowell v. Apfel, 242 F.3d 793, 797 (8th Cir. 2001)); Choate v. Barnhart, 457 F.3d 865, 872 (8th Cir. 2006) ("[A]n ALJ may properly consider the claimant's . . . failing to take prescription medications, seek treatment, and quit smoking.") (citations omitted).

The ALJ's finding that plaintiff's level of treatment is inconsistent with his allegations of disability is supported by substantial evidence. For example, the ALJ considered plaintiff's work activities - specifically his work after the alleged right wrist injury in 1980 or 1981, and observed that plaintiff had been gainfully employed despite the injury until 2009 when he was fired; similarly, the ALJ considered plaintiff's neck injury from November 2008, and observed that plaintiff had worked until 2009 when he was fired. The fact that plaintiff was able to work despite these impairments suggests that they are not as limiting as he claims. See Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008) ("Thus, despite suffering from what she calls 'extreme fatigue,' Van Vickle continued working for over four years."). Additionally, the fact that plaintiff

16

left his job for reasons other than his medical condition detracts from his credibility. Medhaug v. Astrue, 578 F.3d 805, 816-17 (8th Cir. 2009).

The ALJ also found that plaintiff's daily activities do not support the allegations. For example, plaintiff reported that he returned to Missouri to take care of his elderly father who suffers from "severe lung problems" (Tr. 761, 1044, 1212). However, plaintiff lives on 40 acres, cares for two goats, and mows the lawn. The July 2010 shoulder injury occurred when plaintiff was digging potatoes in his garden. On December 14, 2010, plaintiff told his doctor that he had moved two ricks of wood[2] the day before, because it had to be done, but raised no complaints of pain from the activity (Tr. 1235). The ALJ found that these daily activities are inconsistent with the level of disability alleged. Medhaug v. Astrue, 578 F.3d 805, 817 (8th Cir. 2009) (acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling impairments); Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000); 20 C.F.R. § 416.929(c)(3)(i). In a credibility analysis, consideration of daily activities is appropriate because allegations of pain may be discredited by evidence of daily activities inconsistent with such allegations. Benskin, 830 F.2d at 883.

Plaintiff also criticizes the ALJ's finding that plaintiff was "generally unpersuasive" while testifying at the hearing (Tr. 61). The ALJ is a finder of fact, and the ALJ's personal observations of a claimant's demeanor during the hearing are "completely proper in making credibility determinations." Johnson v. Apfel, 240 F.3d 1145, 1147-48 (8th Cir. 2001) (citing Smith v. Shalala, 987 F.2d 1371, 1375 (8th Cir.1993)). While an ALJ is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations, it is a factor that may be considered. Polaski, 739 F.2d at 1322.

I therefore find that substantial evidence supports the ALJ's credibility determination.

---

[2] A rick of wood is generally described as being four feet tall and eight feet long.

## VII. CONCLUSIONS

Based on all of the above, I find that the substantial evidence in the record as a whole supports the ALJ's decision. Therefore, it is

ORDERED that plaintiff's motion for summary judgment is denied. It is further

ORDERED that the decision of the Commissioner is affirmed.

                                        **/s/ Robert E. Larsen**
                                        ROBERT E. LARSEN
                                        United States Magistrate Judge

March 19, 2014
Kansas City, Missouri